## MATTER OF BRANDI

### In Deportation Proceedings

A-20324237
A-20324239

*Decided by Board September 17, 1974*

(1) Respondents, natives and citizens of Mexico are parents of two United States citizen children. They are not ineligible for special immigrant visas under any of the provisions of section 212 of the Immigration and Nationality Act. They are not eligible for suspension of deportation under section 244(a)(1) of the Act, as persons who are ineligible to obtain a nonquota immigrant visa merely because visas are not immediately available.

(2) The legislative history of the Act shows that within the context of section 244(f)(3) of the Act the term "non-quota immigrant" and "special immigrant" are synonymous.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitors, remained longer than permitted.

ON BEHALF OF RESPONDENTS:    ON BEHALF OF SERVICE:
Joseph S. Hertogs, Esquire    Paul C. Vincent, Esquire
Jackson & Hertogs       Appellate Trial Attorney
580 Washington Street
San Francisco, California 94111

This is an appeal from an order of an immigration judge, finding the respondents deportable on the above-stated charge, denying their applications for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, but granting them voluntary departure. The appeal will be dismissed.

The respondents are husband and wife, both 30 years of age. They are aliens, natives and citizens of Mexico, who entered the United States at Los Angeles, California on or about June 17, 1965 as nonimmigrant visitors for a temporary period. Thereafter, they were authorized to remain until August 20, 1966. They failed to depart within the time specified.

They admitted the truth of the factual allegations in their respective orders to show cause and conceded deportability. We find that deportability has been established by evidence which is clear, convincing and unequivocal.

To be eligible for suspension of deportation under section 244(a)(1) of the Act, the respondents must establish, inter alia: (1) physical presence in the United States for a continuous period of not less than seven years immediately preceding the date of application; (2) good moral character during all that period; and (3) extreme hardship to the respondents or other specified family members, which would result from deportation.

Under section 244(f)(3) of the Act, the provisions of section 244(a) shall not be applicable to an alien who is a native of any country contiguous to the United States or of any adjacent island named in section 101(b)(5): Provided, That the Attorney General may in his discretion agree to the granting of suspension of deportation if the alien establishes to the satisfaction of the Attorney General that he is ineligible to obtain a nonquota immigrant visa, Act of October 24, 1962 (76 Stat. 1247).

We agree with the conclusion of the immigration judge that the respondents are not eligible for suspension of deportation since they did not establish that they were ineligible to obtain special immigrant visas as required under section 244(f)(3) for natives of a country contiguous to the United States. As parents of United States citizen children, they are exempt from the labor certification requirements of section 212(a)(14) of the Act. The various grounds of ineligibility for immigrant visas are set out in the separate paragraphs, (1) through (31), of section 212(a) of the Act. There is no evidence in this record to demonstrate that these respondents are ineligible under any of the aforesaid paragraphs. The contention that the respondents are ineligible for special immigrant visas because visas are unavailable at the present time and will be unavailable for a substantial period of time was rejected by us in *Matter of Najar*, 13 I. & N. Dec. 737 (BIA 1971). In that case we stated:

"... We concur with the special inquiry officer's opinion that the nonavailability of an immigrant quota number under the Western Hemisphere, and the need to wait some fourteen months for the assignment of a number, is an element of extreme hardship and is to be distinguished from the matter of being ineligible to obtain an immigrant visa."

Relying on *Matter of Najar*, we concur with the immigration judge's decision that the respondents are not eligible for suspension of deportation under section 244(a)(1) of the Act.

Counsel contends that on the basis of our unreported decision in *Matter of Ka Mei Lam*, A-14702549 (BIA December 13, 1973), we should sustain his position that the respondents are ineligible for immigrant visas within the meaning of the proviso to section 244(f)(3) of the Act. We do not agree. Although in *Matter of Ka Mei Lam*, supra, we found the alien ineligible for a visa, that conclusion was grounded on the fact that the alien was a citizen of China who had failed to establish her birth in Mexico.

The main objection raised by counsel is that the proviso to section 244(f)(3) of the Act pertains, as specified by the language, to ineligibility to obtain a nonquota immigrant visa and not to ineligibility to obtain a special immigrant visa as indicated in a footnote in the publication of the Immigration and Nationality Act, printed for the use of the Committee on the Judiciary, House of Representatives.

Under section 101(a)(27) of the Immigration and Nationality Act, approved June 27, 1952, provision is made for the admission without a quota charge of an immigrant who is a native of an independent Western Hemisphere country, U.S. Code Cong. & Adm. News, 82d Cong., 2d Sess. (1952), p. 1692. The term "nonquota immigrant" was defined to mean, inter alia: "(C) an immigrant who was born in Canada, the Republic of Mexico, the Republic of Cuba, the Republic of Haiti, the Dominican Republic, the Canal Zone, or an independent country of Central or South America, and the spouse or the child of any such immigrant, if accompanying or following to join him: . . . ."

By the Act of October 3, 1965 (70 Stat. 911) the definition of "special immigrant" was substituted for the definition of "nonquota immigrant." Section 101(a)(27) of the Act now defines "special immigrant" to mean, inter alia: "(A) an immigrant who was born in any independent foreign country of the Western Hemisphere or in the Canal Zone and the spouse and children of any such immigrant, if accompanying, or following to join him: Provided, That no immigrant visa shall be issued pursuant to this clause until the consular officer is in receipt of a determination made by the Secretary of Labor pursuant to the provisions of section 212 (a)(14)." By section 21(e) of the Act of October 3, 1965 (79 Stat. 911), provision was made for a numerical limitation of 120,000 annually on special immigrants within the meaning of section 101(a)(27)(A), exclusive of special immigrants who are immediate relatives of the United States beginning July 1, 1968 unless the Congress enacted legislation providing otherwise prior to that date. See U.S. Code Cong. & Adm. News, 89th Cong., 1st Sess. (1965), p. 3344.

After careful analysis of the statutory changes made to section 101 (a)(27) of the Act, we are convinced that it was the intent of Congress to substitute the term "special immigrant" for the term "nonquota immigrant," since the quota limitation for special immigrants was to begin in 1968 and then only if no legislation was enacted by the Congress prior thereto. The failure on the part of Congress to change the language in the proviso to section 244(f)(3) of the Act from "nonquota immigrant" to "special immigrant" when the Western Hemisphere quota limitations took effect in 1968 did not in any way alter the Congressional intent with respect to aliens from Western Hemisphere countries. Our decisions interpreting section 244(f)(3) indicate that within the context of this section "nonquota immigrant" and "special immigrant" are synonymous.

118

See *Matter of Najar*, supra; *Matter of Longsworth*, 13 I. & N. Dec. 225 (BIA 1969); *Matter of Valesquez-Hernandez*, 11 I. & N. Dec. 781 (BIA 1966); *Matter of Padilla-Munoz*, 11 I. & N. Dec. 836 (BIA 1966); and *Matter of Reeves*, 11 I. & N. Dec. 618 (BIA 1966).

We are satisfied that the respondents have not established that the relief of suspension of deportation under section 244(a)(1) of the Act is available to them. Voluntary departure is the only discretionary relief for which the respondents are eligible and they were afforded this relief. Since execution of the immigration judge's order has been stayed during the pendency of this appeal, we will provide for voluntary departure for the respondents in accordance with the time fixed in the order.

**ORDER:** The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondents are permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondents shall be deported as provided in the immigration judge's order.